# Hay, Appellant, *v.* Valley Pike Company.

*Corporations—Turnpike companies—Eminent domain—Failure to file bond—Minor's estate—Laches.*

A turnpike company entered on land belonging to minors, without filing a bond, under circumstances which indicated the consent of the mother and the guardian of the minors, to the entry. Subsequently the company without filing a bond petitioned the court for the appointment of viewers. Viewers were appointed and assessed damages. The company appealed. An issue was directed and framed for a trial by jury, all the parties filing a paper signed by counsel agreeing how the case should be tried. Nothing further was done in this proceeding at the time. Many years after the minors became of age they brought an ejectment to recover the strip of land taken by the company fifteen years before. The ejectment was tried, a verdict rendered for the plaintiffs and judgment was entered on the verdict with a stay of execution for four months. The case was continued by further stays until a year after the ejectment was brought. The plaintiffs then issued a writ of habere facias. In the meantime and shortly after the judgment in ejectment, the company put the original appeal on the trial list, and the case was continued at the instance of plaintiff's counsel from term to term, the stays continuing the status quo. After the writ of habere facias was issued the company petitioned for a further stay, and the court directed it to file a bond, and stayed the execution until further order. *Held,* that the order of the court was proper. Oliver v. Ry. Co., 131 Pa. 408, followed.

Argued May 4, 1908. Appeal, No. 1, April T., 1908, by plaintiffs, from order of C. P. Cambria Co., Sept. T., 1906, No. 77, staying execution in case of John S. Hay and George Hay v. Valley Pike Company and Johnstown Passenger Street Railway Company. Before RICE, P. J., PORTER, HENDERSON, MORRISON, ORLADY, HEAD and BEAVER, JJ. Affirmed.

Petition for stay of execution. Before O'CONNOR, P. J.
The facts are stated in the opinion of the Superior Court.

*Error assigned* was order staying the execution.

*Robert S. Murphy,* with him *David P. Weimer,* for appellant.

*Percy Allen Rose,* with him *Forest Rose* and *W. Horace Rose,* for appellees.

OPINION BY HEAD, J., February 26, 1909:

In order to avoid the confusion that may arise from the facts that we have two separate and distinct corporations each possessing franchises of a different character, and two separate and distinct proceedings in the court below, each attended by a train of motions, rules and interlocutory orders, all interfused in the single record now before us, it becomes necessary to state, with as much clearness and precision as we may, the material facts exhibited by the record and the legal issues they present for our consideration.

In 1889 the land, the subject of this controversy, was owned by the widow and two minor children of John B. Hay, who had died a few years before, intestate as we understand, seized of the premises. In that year the Valley Pike Company, a duly created corporation of the state and invested with the right of eminent domain, entered upon a portion of this land and began the construction of the turnpike authorized by its charter. It does not appear that this entry was preceded by any formal grant or release from the widow and guardian of the children, or by the tender to them or filing in court for their benefit, of a bond securing to them the damages, if any, that would accrue from the construction and maintenance of the highway. But as the entry was open, the work of a public character involving the expenditure of both time and money, as the owners took no steps in court or out of it to protect themselves against what is now alleged to have been a trespass pure and simple, and especially in view of the proceedings that followed, we can hardly escape the inference that there must have been some understanding between the landowners and the company, and that the entry of the latter was not then regarded as an unlawful invasion of the rights of the former.

To No. 15 of June Term, 1892, of the court of common pleas of Cambria county, the Pike company presented its petition setting forth its charter authorizing it to construct a turnpike from Johnstown to Bens creek, and that in pursuance of its

charter powers it had entered on a strip of the land in question and constructed its turnpike on and along the same and that by reason of the minority of the two children (the present plaintiffs) it had been unable to agree with the owners of the land as to the compensation due them for the strip of ground taken for the public purposes of the corporation. It prayed for the appointment of viewers. Notice of the filing of this petition was duly served on the widow and guardian of the minors. In due time, no answer having been filed or objection made by the owners, the viewers were appointed. The viewers met on the premises on the day fixed, and their report shows that both the widow and guardian were present. This report filed in court awarded $500 damages to the owners. To this report they filed no exceptions; from it they never appealed.

The company, however, did appeal, and, on March 13, 1893, the court made an order directing a feigned issue to be framed, in which the owners should be plaintiffs and the company defendant, "to determine what damages, if any, will be sustained by the plaintiffs, by reason of the opening and constructing of said turnpike by the defendant," etc. To this order there was not only no objection, but on June 30, 1893, a paper was filed, signed by counsel for all of the parties, agreeing how the case should be tried and practically constituting the feigned issue directed by the court.

From that time forward it does not appear that the present plaintiffs ever made a move to speed that proceeding or bring it to a conclusion, although one of them must have attained his majority about 1893, the other about 1901. They never undertook to repudiate the agreement made for them by their counsel, they asked for no order directing the filing of a bond, if that was what they desired, they made no motion to quash the proceedings on the ground that they had been improvidently begun or because the court was without jurisdiction of the parties or subject-matter. It would seem they must have concluded either that no such damages would likely be recovered as would justify the expense of further litigation, or else that they were at liberty to ignore all that had been done as if they had been in no wise affected by it. The difficulties that would arise if the

public acts and proceedings of our courts, in the administration of the law, could be thus treated by the parties we need not now stop to consider.

In January, 1905, the plaintiffs brought an action of ejectment to recover the possession of the strip of land which for about fifteen years had been open to public travel as a turnpike. The abstract of title filed by defendants, under the modern practice in the trial of such actions, exhibited all of the facts already recited and they were in no way controverted by any counter abstract. They were therefore regarded, under the rule of court, as admitted. When the cause came on for trial no witnesses were called, no testimony offered other than the abstracts of title and the various records therein referred to: A verdict was rendered for the plaintiffs and the court permitted judgment to be entered thereon with a stay of execution for four months. No objection seems to have been made from any source to the judgment thus entered. Whilst the purpose of the stay is not indicated in the order for judgment, it was manifest.

It appears from averments, in the petition for further stay and the answer thereto hereinafter referred to, not denied on one side or the other, that counsel for the Pike company had the appeal, at June Term, 1892, put on the trial list at the March and June Terms, 1906, but that at each term it was continued for some satisfactory cause and at the instance of plaintiffs' counsel. Meantime further orders of stay became necessary to maintain the status quo and they were accordingly made, the last one on March 5, 1906, to expire on July 1 following. The case not having then been disposed of, the plaintiffs, on July 14, 1906, issued a writ of habere facias. This brought a formal petition for further stay to which answer was made, and the court in an opinion ordered and directed the company to file, at No. 15, June Term, 1892, a bond of $5,000 within ten days; that the cause be placed on the next trial list for trial and that the stay of execution be continued until the further order of the court.

We have thus fairly before us, I think, the situation that confronted the learned judge below when he made the order complained of. He declares his action, in making it, was controlled by the authority of the well-established policy of our courts as

declared in Oliver v. Railway Co., 131 Pa. 408, and the line of decisions cited with approval by the learned justice who spoke for the court in that case. Wherein was he in error in so holding?

In that case, as in this, a plaintiff, who was the undisputed owner in fee of the land, brought an action of ejectment against a quasi public corporation, invested with the right of eminent domain, which, many years before, had made an entry on the land and constructed across it a portion of its public highway. There, as here, the owner was a minor at the time of the entry, and his fee was subject to the widow's estate of his mother. There it appeared that the entry had been made with the actual consent of the mother and the acquiescence of the guardian. Here, while there is no direct evidence of such consent or acquiescence, the inference of both almost irresistibly arises from the conceded facts, and the plaintiffs have never undertaken to assert the contrary. There, as here, the corporation had obtained no valid grant from the real owner, the minor, and neglected to file a bond to secure his damages; and in that case never did anything to indicate it was attempting to lawfully condemn the land and ascertain the damages.

In the present case as soon as the work was completed the corporation began a proceeding in court to have the damages assessed. True, it did not comply with all of the legal requirements, but both parties treated the proceeding as if all were regular and carried it along, in seeming good faith, until there were a view, an award, an appeal from that award, an order of court directing an issue and an issue actually framed for a trial by jury, when their further energies seem to have been sapped in some unaccountable way and both have slept on their rights ever since.

Under these circumstances how can it be successfully contended that the situation of the defendant in this case is less favorable than was that of the railway company in the case cited? Yet there whilst the plaintiff recovered a verdict, he was not permitted to have execution of his judgment to the destruction not only of the equities that had grown up in favor of the corporation, but of the rights of the public in the highway as

well, until a proper opportunity had been afforded the corporation to file its bond and proceed as it should have done in the first instance. The following quotation from the opinion in the Oliver case demonstrates, we think, that the reasoning which supports the judgment rendered by the Supreme Court is in every sense applicable to the situation now before us: "In Railroad Co. v. Colwell, 15 Atl. Repr. 927, it was said: 'But as Colwell was at least passively derelict in knowingly permitting the railroad company to occupy and put its improvements on his land, we agree that it would be inequitable to allow the judgment to work a forfeiture of those improvements;' and execution was accordingly stayed upon the judgment, to enable the railroad company to proceed under the statute, and have the damages assessed. There was in that case, and there is in this, no contract for the sale of the right of way capable of enforcement by means of a conditional verdict in ejectment, but the equities growing out of the entry by permission, the expenditure of money, and the construction through the premises of a continuous line of railroad, so that resumption of possession by the landowner would interrupt the traffic of the entire line, required us to send him to the tribunal which the law provides for the ascertainment of the damages to which he was entitled."
If it be said that even if this case be classified with Oliver v. Railway Co., the defendant corporation had been given all the grace to which it was entitled in the four months' stay of execution, subject to which the judgment was entered, we are obliged to say that the delay which followed the entry of the judgment in ejectment is to us as inexplicable as that which followed the preparation for trial of the feigned issue. But so far as the record shows, the responsibility for this delay does not rest wholly on the shoulders of either of the parties litigant. Neither one of them is in a position to demand that a legal principle, otherwise applicable, should be regarded as in abeyance by reason of the laches of the other party.

We are constrained to think, therefore, that the learned trial judge correctly interpreted that case as practically controlling and fairly applied its principles in the order which he made. If the real dispute between the parties be—and there is much in

the record and arguments of counsel to support the idea—whether the damages should be assessed as of the date of the original entry or only of the filing of the bond, no such question is before us. It has not yet been adjudicated by the court below, and any discussion of it by us would be not only premature but entirely useless.

For the purposes of this case we do not understand that the learned counsel for the appellants asks us to make any distinction between the rights of the Pike company and of the street railway company, the other defendant. If the former proceeds in good faith, under the order of the court, to have the plaintiffs' damages secured or paid, then their right of possession will surely have passed and any claim that the railway company was imposing any additional servitude upon their reversion would probably be asserted in some other way. The assignments of error are all overruled.

Decree affirmed and appeal dismissed at the costs of appellants; and the record is remitted with a procedendo.